## Peebles & Cahoon *versus* Meeds, administrator.

1. P. & C. gave to G. their due bill in these words "Due George K. Gamble two thousand dollars, payable in boarding at the St. Charles Hotel, Pittsburgh, to an extent not exceeding one hundred and fifty dollars per month, to be provided to George K. Gamble, or to any person he may direct, at regular rates." M. obtained a judgment against G. and issued an attachment-execution against P. & C., who pleaded *nulla bona*. On the trial of the attachment the jury found that P. & C. were indebted to G. in the sum named and upon the terms in the above due bill, "given for a good and sufficient consideration," and judgment was entered on the verdict: *Held*, that the claim was not attachable.

2. Per GORDON, J.—It is not a debt due at the present or which will become due in the future, so that no judgment can be had against the garnishees in this form; neither is it of such a character that it can be taken in execution. It is but an agreement to do something when called upon, that is, furnish boarding to a certain amount. Were there a breach of this contract the case would be different, for in that case judgment could be had for an amount that could be readily liquidated.

November 8th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1880, No. 285.

Attachment sur judgment of J. B. D. Meeds, administrator of

[Peebles *v.* Meeds.]

Peter A. Madeira, deceased, against George Gamble, and served upon Peebles & Cahoon, as garnishees.

Prior to August 19th 1879, George K. Gamble was the proprietor of the St. Charles Hotel, Pittsburgh, owning the furniture and having a lease of the building. On that day he sold his lease and furniture to Peebles & Cahoon, receiving therefor $4000 in cash and $4000 in notes, and an agreement to furnish board to said Gamble, or such person as he might direct, to the amount of $2000. On the 17th day of October 1879, an execution attachment was served, and the case having been put at issue on a plea of *nulla bona*, it was tried September 30th 1880. On the trial it appeared that all the notes had been assigned before service of the writ, and that Gamble and wife had boarded at the St. Charles, under the agreement, the value of the same, at regular rates, being $152.30. A special verdict was returned, as follows:

"And now, October 1st 1880, verdict for plaintiff; and we find that the defendant, George K. Gamble, is indebted to the plaintiff, on the judgment on which the execution attachment was issued, in the sum of $1578.80, principal and interest; and in the further sum of $9.75, costs in same case. And we further find, that at the date of the service of said attachment on the garnishees, they were indebted to the said George K. Gamble in the sum of $1847.70, and attached in the case and payable in boarding at the St. Charles Hotel, Pittsburgh, at regular rates, under the terms of a due bill, or contract, given for a good and sufficient consideration, a true copy of which is as follows:

"Due George K. Gamble, two thousand dollars, payable in boarding at the St. Charles Hotel, Pittsburgh, to an extent not exceeding one hundred and fifty dollars per month; to be provided to George K. Gamble, or to any person he may direct, at regular rates.

PEEBLES & CAHOON.

Pittsburgh, August 19th 1879."

On this judgment the court entered the following judgment:

"And now, October 2d 1880, on motion of plaintiff, judgment is entered against the defendant, George K. Gamble, for want of an issuable plea, and against the defendants, Peebles & Cahoon, on the verdict for the sum of $1578.80, principal and interest, and $9.75 costs, of the original judgment, to be levied of the effects of the defendant, George K. Gamble, in the hands of the defendants, Peebles & Cahoon, to wit, $1847.70, payable in boarding at the St. Charles Hotel, in the city of Pittsburgh, not exceeding $150 per month, at regular rates; and in default of delivery thereof, or otherwise refusing to satisfy the demand therefor, on the presentation by the sheriff of any execution issued in these

[Peebles *v.* Meeds.]

proceedings, then to be levied of the proper goods and chattels and effects of the said defendants, Peebles & Cahoon, according to law, as in the case of a judgment against them for their own proper debt; and the said Peebles & Cahoon shall be thereupon discharged, as against said defendant, George K. Gamble, for the sum so attached and levied of the debt in their hands."

Peebles & Cahoon took this writ and alleged that the court erred in this entry of judgment.

*Slagle & Wiley*, for plaintiffs in error.—This case presents a novel question. "Debt is generally used in a mercantile sense:" (Crabb's Synonyms 217), and as used in the Act of 1836, must be taken strictly in that sense. Though a debt may be an obligation, payable in any manner agreed upon, in its restricted sense it must be payable in money, otherwise it is of imperfect obligation; because, if payable in anything else, its value cannot be accurately ascertained. A person might buy property, and agree to pay the price in lands, bonds, stocks or other property, which he would not, or could not, afford to pay in cash; as in this very case it would be very easy for the garnishees to pay $2000 in boarding, upon which they would have a large profit, when they would not be willing to pay the same amount in money. It would, therefore, be a great wrong to compel them to pay what, under the circumstances, would be a great deal more than they agreed to pay. This would be to make a new contract for the parties. The court, for this reason, erred in their judgment, in directing that, in default of delivering boarding, according to the contract, "or otherwise refusing to satisfy the demand," then execution to be levied upon the goods, chattels and effects of the garnishees.

This part of the judgment is wrong for another reason: That the special verdict in the case does not justify it. It finds that the debt was payable in boarding at the St. Charles, to be provided to George K. Gamble, or to any person he may direct; and the judgment should have followed the verdict.

But, aside from this, the process provided by law is not applicable to such a case. The Act of June 16th 1836, sect. 57, provides that the plaintiff may have execution against the garnishee, "as in case of a judgment against him for his proper debt, to be executed if the garnishee shall neglect, or refuse, upon the lawful demand of the proper officer, to produce and deliver the goods and effects of the defendant, as aforesaid, or to pay the debt, or duty, attached, if the same shall be due and payable." The garnishee may discharge himself by surrender of the property, and is not, in any case, responsible beyond its value: Hampton *v.* Matthews, 2 Harris 106. It is apparent that this law could not, in this case, be executed. The goods and effects could not be delivered to the sheriff, and the garnishees were not bound to pay money, and, therefore, could not

[Peebles v. Meeds.]

discharge themselves in the mode prescribed by law.   It was accord
ingly held, in Christmas v. Biddle, 1 Harris 223, that a certificate
of bank stock of another state could not be attached in the hands
of a broker, to whom it was sent for sale, " inasmuch as he could
not produce it to be sold on fi. fa."

*J. M. Stoner*, for defendant in error.—The property sought to be
attached in this case is a note or due bill, payable in boarding, given
by the garnishees to the defendant, Gamble, as part of the consid-
eration of a sale by him to them of the St. Charles Hotel.   That
the transaction created a debt which comes within the letter of the
attachment law, can hardly be denied.   The fact that it is payable
in specific articles cannot affect its character as a debt.   And the
language of the Act of Assembly in this connection, has had, from
this court, a very liberal construction.   Thus, in Boyle v. Franklin
Fire Insurance Co., a loss incurred on a fire insurance policy was
fixed by an award.   On the trial, the court below charged the jury
that the plaintiff was not entitled to a verdict, inasmuch as no debt
appeared to be due according to the proper construction of the Act
of Assembly relating to attachments in execution.   This court,
reversing the court below, held that the claim was clearly the sub-
ject of attachment.   In Stewart v. McMinn, 5. W. & S. 100, a
voluntary assignment for the benefit of creditors had not been
recorded within thirty days, but the assignees had sold part of the
property and held the proceeds in their hands.   The court below
entered judgment on a case stated for the defendant, on the some-
what plausible ground that the assignment, though avoided as to
creditors, was good against the party who made it, and therefore there
could be no indebtedness of the assignees to him.   This court revers-
ed the judgment and entered judgment for the plaintiff, SERGEANT,
J., observing : " Although the assignment is null and void against
creditors, yet it is good between the assignor and assignees : the
assignor, therefore, not being able to demand the funds, they are
not, it is contended, a debt due to him.   If we are bound down to
the rigid letter of the act this position may, perhaps, be true.   But
we think we must look at the spirit of the act giving the attachment,
and endeavor to effectuate its design and object ; and these were to
enable the creditor to reach funds belonging to the debtor which
could not be seized on a fieri facias, but were in the hands of a third
person, such as debts and other choses in action, goods pawned, &c. ;
and that for the benefit of the creditors and to give them a remedy,
the funds in hand or uncollected may be considered as debts due to
the assignor."   In Sweeny v. Allen, 1 Barr 380, a debt in suit had
been attached, and a rule to appear and answer interrogatories was
discharged by the court below for the reason that such a debt could
not be attached.   This court reversed the order, and awarded a pro-
cedendo.   In Winternitz's Appeal, 4 Wright 490, it is held that a

debt due to a third person by the plaintiff in an execution, under which the goods of his debtor, the defendant, are taken by the sheriff but not sold, is the subject of attachment process. So a claim for general average, for a loss by fire, whether adjusted or not; a claim for a culvert payable to a contractor may be attached, &c., &c. Troubat & Haly's Practice, by Brightly, sects. 1183 and 1184.

The precise question in this case has been decided by two of the courts of Philadelphia. In Collum *v.* Mason, 1 W. N. C. 298, the garnishee answered that he had been indebted to the defendant, Mason, in the sum of $1919.42, payable to him in wagon or smith work, and that at the time the writ was served, there was remaining unpaid of the above sum $475, payable in wagon or smith work as aforesaid. On a rule for judgment against garnishee for amount admitted to be due, the court (Common Pleas No. 1) made the following order, as appears by the record: "Rule absolute for $475, payable in wagon and smith work, less $25 counsel fee payable as aforesaid." In Gill *v.* Snyder, 2 W. N. C. 155 (Common Pleas No. 4), the garnishee admitted that he owed the defendant $128.34, payable in trade, to wit: painting work. The record shows the following order: "Rule absolute judgment against garnishee for $128,36. payable in the manner mentioned in the special order filed." The special order provided for payment in trade.

Mr. Justice GORDON delivered the opinion of the court, November 22d 1880.

The claim attached in this case, though in form a due bill, is really an agreement by Peebles & Cahoon to furnish boarding to George K. Gamble, or to such persons as he may direct, to the amount of $2000.

Whether or not a claim such as this is attachable is the question for our solution. We think it is not. It is not a debt due at the present or which will become due in the future, so that no judgment can be had against the garnishees in this form; neither is it of such a character that it can be taken in execution. It is but an agreement by the defendants to do something when called upon, that is, furnish boarding to a certain amount. Were there a breach of this contract the case would be different, for in that case judgment could be had for an amount which could be readily liquidated: Insurance Co. *v.* Field et al., 9 Wright 129. But as the matter now stands that is not possible. It is a fact that the attachment acts do not cover all cases where there is no other legal remedy, as the learned counsel for the plaintiff below thinks they ought to do. Unliquidated damages, whether arising from a tort or from a breach of contract, are not embraced by them: Insurance Co. *v.* Field, *supra.* Nor an unsettled partnership account: Knerr *v.* Hoffman, 15 P. F. Smith 126. By the thirty-eighth section of the Act of June 16th 1836, if the property attached be

[Peebles *v.* Meeds.]

a deposit of money or a debt due, execution shall be had in the manner allowed in case of effects in the hands of a garnishee in foreign attachment. On turning to the forty-ninth and fiftieth sections of the Foreign Attachment Act, we find two methods prescribed by which judgment against the garnishee may be enforced (1) by execution against the goods and effects found to be in his hands; (2) by like process against the garnishee, as in case of a judgment for his own proper debt, should he refuse to deliver the goods and effects of the defendant or refuse to pay the debt attached. But it is clear that the defendants come within neither of these cases; they do not now, and, if they perform their contract, never will owe the defendant a debt upon which judgment can be recovered against them, nor have they any property of any kind in their hands belonging to him which they can turn over to the sheriff, or upon which that officer can levy. What then remains? This claim is not stock, a deposit of money, a municipal bond, chose in action, or even liquidated damages. It is, therefore, clearly not within the reach of an attachment.

The judgment is reversed.